```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                           :
HOMEVESTORS OF AMERICA, INC.,                              :
                                                           :
                              Plaintiff,                   :    **MEMORANDUM**
                - against –                                :    **DECISION AND ORDER**
                                                           :
FRANCISCO FRANK FANTINI, d/b/a                             :    18-cv-3741 (BMC)
Wejustbuyuglyhouses.com,                                   :
                                                           :
                              Defendant.                   :
                                                           :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brings this action under the Lanham Act, alleging that defendant has willfully infringed plaintiff's federally registered trademarks and subjected plaintiff to unfair competition as a result. Plaintiff seeks a permanent injunction to prevent defendant from further infringing its trademarks. Before me is plaintiff's motion for default judgment. For the reasons below, the motion is granted.

## BACKGROUND

According to the complaint, plaintiff sells real estate franchises to investors who then renovate and sell or rent the houses that they purchase. Plaintiff claims that it is well known by its slogan, "We Buy Ugly Houses," for which it was granted a service mark registration by the United States Patent and Trademark Office ("USPTO") in September 2003. Plaintiff owns more than 30 registered marks and alleges that at least 22 of them are important to this lawsuit. Those marks all incorporate the concept of "ugly houses" and appear in either English or Spanish. Plaintiff claims that its franchisees spend at least $40 million annually on advertising with its marks.

Defendant competes with plaintiff in buying and selling houses in distressed situations and operates a website with the domain www.wejustbuyuglyhouses.com. Plaintiff claims that defendant uses marks that are "confusingly similar" to plaintiff's marks, including on defendant's social media web pages, in URL extensions associated with his website, and in hidden metatags or source codes that divert consumers who are searching for plaintiff on the internet.

Plaintiffs twice notified defendant of its alleged infringement on plaintiff's marks, but defendant has ignored both of those notices. As a result, plaintiff filed the instant lawsuit, claiming that defendant is willfully and intentionally infringing upon plaintiff's marks, which has harmed plaintiff.

## DISCUSSION

### I. Liability

In the context of a motion for default judgment, a court accepts the well-pleaded allegations of a complaint pertaining to liability as true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). "Thus, the court must look to the allegations of the complaint regarding liability to determine whether plaintiff has adequately pled its claims." Philip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 451 (E.D.N.Y. 2011)

Here, plaintiff's complaint states a claim for relief under the Lanham Act. Plaintiff's first claim is for trademark infringement under section 32(1)(a) of the Lanham Act; plaintiff's second claim is for trademark infringement, false designation of origin, and unfair competition under section 43(a)(1)(A) of the Lanham Act. "Courts employ substantially similar standards when analyzing claims" for trademark infringement and false designation of origin (that is, unfair competition) under Sections 32 and 43 of the Lanham Act. Van Praagh v. Gratton, 993 F. Supp.

2d 293, 301 (E.D.N.Y. 2014).  Thus, a single standard will apply to both of plaintiff's claims for relief.

"The Lanham Act prohibits the use in commerce, without consent, of any 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion."  Time, Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999) (quoting 15 U.S.C. § 1114(1)(a)).  To succeed on a claim for trademark infringement under the Lanham Act, a plaintiff must show two things:  (1) that "it has a valid mark entitled to protection," and (2) that "the defendant's use of it is likely to cause confusion."  Id. (internal quotation marks and citations omitted).

As for the first element, registered trademarks are entitled to a presumption of validity. See 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark."); CJ Prod. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 151 (E.D.N.Y. 2011).  Here, plaintiff's marks are registered with the USPTO, and are therefore deemed valid and entitled to protection for the purposes of this motion.

With respect to the second element, courts in the Second Circuit consider the factors articulated in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961), to determine whether a defendant's use of plaintiff's valid mark is likely to cause confusion.  Time, Inc., 173 F.3d at 117.  The Polaroid factors are:  (1) "the strength of the mark"; (2) "the degree of similarity between the two marks"; (3) "the proximity of the products"; (4) "the likelihood that the prior owner will bridge the gap"; (5) "actual confusion"; (6) "the defendant's good faith in adopting its mark"; (7) "the quality of the defendant's product"; and (8) "the sophistication of the buyers."  Id. (internal quotation marks and citations omitted).  No single factor is dispositive, nor is a court limited to consideration of only these factors."  Brennan's, Inc. v. Brennan's Rest.,

3

L.L.C., 360 F.3d 125, 130 (2d Cir. 2004) (quoting Polaroid, 287 F.2d at 495). I will address each factor in turn.

First, "[t]here are two components of a mark's strength: its inherent distinctiveness and the distinctiveness it has acquired in the marketplace." Brennan's, 360 F.3d at 130-31. Inherent distinctiveness "examines a mark's theoretical potential to identify plaintiff's goods or services," and acquired distinctiveness "looks solely to that recognition plaintiff's mark has earned in the marketplace as a designator of plaintiff's goods and services." Id. Ultimately, the strength of the mark involves the same considerations as the mark's validity. Time, Inc., 173 F.3d at 117. Although it could be argued here that the concept of "buying ugly houses" is merely descriptive (and thus not worthy of protection), the fact that plaintiff's marks are registered is "pertinent to a mark's strength." Id. at 117-18 ("Registration allows a merely descriptive mark to become incontestable on the basis of lack of secondary meaning."). Further, plaintiff alleges that it is well known in the marketplace by its slogan and its marks, and those allegations are deemed to be admitted by defendant here. Therefore, for the purpose of plaintiff's default judgment motion, I will consider plaintiff's marks strong under the Polaroid analysis.

Second, there is a significant degree of overlap between the marks at issue. Plaintiff's slogan is "We Buy Ugly Houses"; defendant's is "We Just Buy Ugly Houses." The only practical distinction between these two concepts is an inference that plaintiff might also buy aesthetically pleasing houses in addition to ugly ones, while defendant only buys ugly houses. But this difference is not meaningful enough to eliminate customer confusion.

Third, plaintiff's and defendant's products are in close proximity in the marketplace. The "proximity-of-the-products inquiry concerns whether and to what extent the two products compete with each other." Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 480 (2d Cir.

4

1996) (internal quotation marks and citations omitted). Plaintiff claims that defendant is a direct competitor for the same products and services as plaintiff, which is deemed admitted here.

Because plaintiff and defendant already occupy the same market, the fourth factor – bridging the gap – is not relevant. See Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743 (2d Cir. 1998) (finding bridging the gap not relevant where plaintiff and defendant occupy the same market, because "in assessing [the fourth] factor, [the Second Circuit] consider[s] the likelihood that the plaintiff will enter the market occupied by the defendant's product to compete against the defendant").

Fifth, plaintiff's complaint arguably includes allegations that customers experience actual confusion by defendant's use of the marks (although this factor has the least support on the face of the complaint). Plaintiff alleges that defendant employs hidden metatags or source codes to divert consumers who are searching for plaintiff to defendant's website. Moreover, plaintiff alleges that its franchisees advertise through print media, billboards, the internet, and on television and radio using the marks, which has garnered plaintiff significant goodwill among the customer base it shares with defendant. Read together, these allegations suggest customers experience confusion as to whether defendant is affiliated with plaintiff's company or otherwise associated with its goodwill.

As for the sixth factor, plaintiff's complaint is replete with allegations that defendant has not acted in good faith. Critical to this factor is plaintiff's allegation that defendant purposefully diverts customers from plaintiff's website to its own (especially when combined with the allegation that plaintiff and defendant are direct competitors); as well as plaintiff's allegation that it sent two cease and desist letters to defendant, both of which defendant ignored. Deemed true, it appears that defendant is knowingly infringing on plaintiff's marks.

The seventh factor – the quality of defendant's product – is considered "neutral" here. See Streetwise Maps, Inc., 159 F.3d at 743 (finding seventh factor neutral where plaintiff's and defendant's products are of similar quality). As I have already noted, plaintiff alleges that it has built significant goodwill by the use of its marks, and that plaintiff and defendant are direct competitors; but plaintiff's complaint does not allege that defendant's product is of any better or worse quality than plaintiff's.

Finally, plaintiff's complaint does not provide any factual allegations concerning the sophistication of the buyers in this market. Under this factor, "[a court] must consider [t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." The Sports Auth., Inc. v. Prime Hosp. Corp., 89 F.3d 955, 965 (2d Cir. 1996) (internal quotation marks and citation omitted). Houses are expensive investments, which purchasers take their time in making. Plaintiff sells its franchises to investors who in turn buy and repair homes to sell or rent to others. As a result, plaintiff's customers are likely more sophisticated than not, which suggests they might not be as confused as plaintiff suggests.

However, based on the allegations as pleaded in the complaint, it is clear that the Polaroid factors significantly weigh in favor of finding that defendant's use of the marks is likely to cause confusion. Because both elements of a claim for trademark infringement are met, plaintiff has established defendant's liability under the Lanham Act for both its claims for relief.

**II.     Relief**

A defendant's default does not constitute an admission with respect to the relief sought in the complaint. Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010) (citing id.). To determine the appropriate relief, a court may conduct a

6

hearing, or it may forego the hearing and rely on the affidavits and other documentary evidence provided by plaintiff. See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015).

There is no need for a hearing in this case. Plaintiff does not request monetary damages; rather, it seeks a permanent injunction. A plaintiff seeking a permanent injunction must show four factors: (1) "that it has suffered an irreparable injury"; (2) "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "that the public interest would not be disserved by a permanent injunction." Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

Irreparable injury used to be but is no longer presumed in trademark infringement actions. See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011). Rather, a plaintiff must demonstrate that it will suffer irreparable harm absent the issuance of a permanent injunction. Irreparable harm "exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark." Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985).

Plaintiff has made a sufficient showing that it will suffer irreparable injury here. For example, plaintiff alleges that its franchisees spend $40 million annually on advertising using its trademarks. This advertising has built up a pool of goodwill towards plaintiff, and it would be unfair to permit defendant to use a substantially similar mark and benefit from that goodwill. Further, plaintiff's allegation that defendant purposely diverts customers from plaintiff's website to his own directly affects plaintiff's business and profits. Although these allegations contained

in plaintiff's complaint are not deemed true for the purposes of the relief to be awarded, the affidavit filed in support of plaintiff's motion for default judgment states that defendant's conduct has increased plaintiff's business and advertising costs and interfered with and damaged its relationship with its customers and "the consumer public at large." Because plaintiff's marks are registered with the USPTO, and given the similarity between plaintiff's and defendant's marks, it is not surprising that defendant's use of the marks would result in significant costs to plaintiff, whether financially or with respect to its customer base. Thus, plaintiff has shown that it will suffer irreparable harm without a permanent injunction.

Moreover, there does not exist an adequate remedy at law. Plaintiff will not be fully compensated through money damages. Ordering defendants to pay the difference in plaintiff's advertising expenses since the time defendant began using similar marks has no bearing on future infringement, nor does it cover the business plaintiff has and will continue to lose by confused customers purchasing or renting a house from defendant rather than plaintiff. Instead, the most appropriate remedy is the one plaintiff seeks – a permanent injunction enjoining defendant from infringing on plaintiff's marks.

For that reason, the balance of hardships also favors plaintiff. As ordered in the permanent injunction issued along with this Order, defendant will be enjoined from representing that it is (or is affiliated with) plaintiff, using confusingly similar marks to plaintiff's, or otherwise unfairly competing with plaintiff. This injunction will serve to protect plaintiff's marks (and by extension, its business), and require defendant to stop using marks similar to plaintiff's. Defendant does not need to reorganize its business in any way – it can still compete in the same market, it just cannot purposefully confuse the customers whose business it seeks.

As for the fourth and final factor, "[t]he Second Circuit has long held that there is a strong interest in preventing public confusion." Juicy Couture, Inc. v. Bella Int'l Ltd., 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (internal quotations omitted). Because plaintiff has adequately pleaded consumer confusion, the public interest is therefore served (and is certainly not harmed) through the issuance of a permanent injunction.

## CONCLUSION

Plaintiff's [12] motion for a default judgment is granted.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
October 1, 2018